*608 WATFORD, Circuit Judge,
dissenting:
When the Morenos took out a.mortgage with Wells Fargo in 2006, they also bought an insurance policy to ensure that they could pay the mortgage in the event that either of them became disabled. Wells Fargo sold the Morenos the policy on behalf of defendant American Bankers Life Assurance Company of Florida (ABLAC). The policy stated that if the Morenos failed to pay either the monthly mortgage payment or the insurance premium in full when due, their insurance coverage would “stop.” But at the time the Morenos bought the policy, Wells Fargo, acting as ABLAC’s agent, told them in writing, “You will be notified prior to termination.” Under Arizona’s “reasonable expectations” doctrine, that assurance became part of the policy, even if other provisions of the policy contradicted it. See Gordinier v. Aetna Casualty & Surety Co., 154 Ariz. 266, 742 P.2d 277, 283-84 (1987); Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co., 140 Ariz. 383, 682 P.2d 388, 396-97 (1984).
A reasonable consumer, not trained in the technicalities of the law, would understand the statement “You will be notified prior to termination” to mean: If I’m short on a payment, or late in making a payment, my policy won’t be terminated automatically. Instead, I will be given notice prior to termination so that I can make up the shortfall (or send the payment in by a specified date) before my policy will be cancelled outright. No reasonable consumer would understand the assurance to mean that I will get notice before termination occurs but there won’t be anything I can do to stop it from happening.
In April 2012, the Morenos ran into some temporary financial difficulties. They paid Wells Fargo $1,000 that month, not enough to cover the roughly $1,400 they owed on the mortgage and the approximately $40 they owed for the insurance premium. Wells Fargo unilaterally allocated all $1,000 to the mortgage, meaning the Morenos were about $400 short on the mortgage payment and failed to pay the insurance premium altogether. (Obviously, if the Morenos had had any say in it, they would have allocated the first $40 of their April payment to the insurance premium since they were going to be short on the mortgage payment either way.) The More-nos were similarly short on their May and June payments, and Wells Fargo again allocated 100% of those payments to the mortgage and none to the insurance premium owed.
No one ever gave the Morenos prior notice that their insurance policy was about to be terminated, as they had been assured would occur. In August 2012, Wells Fargo simply sent them a notice saying that their policy had been can-celled — not because the policy terminated automatically upon their failure to pay the insurance premium back in April, but because they had failed to pay the premiums for 90 days. This was the first the Morenos heard about them policy being terminated, and the notice told them it was too Me to do anything about it — the policy had already been terminated. That obviously doesn’t qualify as receiving notice “prior to termination.”
That the Morenos’ policy did not authorize automatic termination upon their failure to make the April payment is confirmed by the actions of Wells Fargo, acting as ABLAC’s agent. Wells Fargo certainly didn’t think that the Morenos’ failure to make the April payment resulted in automatic termination of the policy. When the Morenos were short that month, Wells Fargo didn’t tell them, “Don’t bother paying any further insurance premiums — your policy has been cancelled.” Wells Fargo continued to bill the Morenos for their monthly premiums *609 in May, June, and July, even though the Morenos were short on their May and June payments as well. So Wells Fargo didn’t interpret the policy as providing for automatic termination upon failure to make a single payment. It understood the policy to contain a grace period of 90 days during which the insured could become current before the policy would be cancelled outright.
The district court dismissed the More-nos’ case because it concluded that the defendants’ conduct could not' have caused the Morenos’ injuries. The court reached that conclusion by two faulty lines of reasoning. First, the court simply ignored the reasonable expectations doctrine and assumed that the policy terminated automatically when the Morenos missed that first payment in April, contrary to Wells Fargo’s own interpretation of the policy. That line of reasoning is wrong because, under the reasonable expectations doctrine, the assurance “You will be notified prior to termination” became part of the policy, even if other provisions of the policy contradicted that assurance. Second, the district court reasoned that, even if the More-nos had received prior notice as promised, it. wouldn’t have made any difference— they still wouldn’t have been able to pay the mortgage and insurance premiums in April, May, and June, and thus the policy would have been cancelled anyway. That line of reasoning is wrong because the Morenos specifically alleged, in a proposed amendment to their complaint, that if someone had given them prior notice they could have made up the-shortfall immediately by tapping into their 401(k) plan and an IRA they owned. They understandably didn’t want to do that if they didn’t have to, as they would have incurred tax penalties. But they could have and would have done so in order to save the policy. (Not long after the events just described, Mr. Moreno became disabled, so the Morenos can’t buy a new policy now.)
Neither of the district court’s rationales for dismissing this case can be sustained. I would reverse the judgment and remand for further proceedings.